**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIANA DUBE, *individually on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>   v.<br><br>REXALL SUNDOWN, INC.,<br><br>Defendant. | Case No. 2:17-cv-01510-LDW-ARL |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND ALTERNATIVE MOTION TO STAY**

## **Table of Contents**

Table of Authorities ........................................................................................................... ii

Introduction ....................................................................................................................... 1

Factual Background .......................................................................................................... 2

Legal Argument ................................................................................................................ 4

I.      Plaintiff's Claims Are Judged by a Reasonable Consumer Standard ................................. 4

        A.      Plaintiff Plausibly Alleges That Defendant's "Naturals" Label Deceives
                Consumers............................................................................................................ 5

        B.      It Is Plausible That Reasonable Consumers Believe Defendant's Gummy
                Products Are Natural.......................................................................................... 9

II.     Plaintiff's Claims Should Not Be Stayed....................................................................... 10

III.    Defendant's Various Standing Arguments Are Premature and Wrong .......................... 14

        A.      Whether Plaintiff Can Represent Purchasers of Other Products Is an Issue
                for Class Certification, Not a Motion to Dismiss .................................................... 14

        B.      Whether Plaintiff Can Represent Out of State Residents Is an Issue for
                Class Certification, Not a Motion to Dismiss ........................................................ 16

        C.      Plaintiff Has Standing to Pursue Injunctive Relief................................................. 18

IV.     Plaintiff Has Sufficiently Pled Her Consumer Protection Claims under the Laws
        of Forty-One States and the District of Columbia ........................................................ 19

        A.      The Complaint Satisfies Federal Rule of Civil Procedure 9(b) ........................... 19

        B.      The Court Should Reject Defendant's Conclusory Argument Concerning
                Differences among the States' Consumer Protection Laws................................... 21

V.      Plaintiff Has Stated a Claim for Breach of Express Warranty......................................... 23

VI.     Plaintiff Has Stated a Claim for Violation of the Magnuson-Moss Warranty Act .......... 24

VII.    Plaintiff Has Stated a Claim for Unjust Enrichment....................................................... 25

Conclusion ...................................................................................................................... 25

i

# **Table of Authorities**

## CASES

*Ackerman v. Coca-Cola Co.,* Case No. cv-09-0395 (JG) (RML),
2010 WL 2925955 (E.D.N.Y. July 21, 2010) ................................................................... 8, 12, 15

*Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML,
2013 WL 7044866 (E.D.N.Y. July 18, 2013) ......................................................................... 19

*Arroyo v. TP-Link USA Corp.*, No. 5:14-CV-04999-EJD,
2015 WL 5698752 (N.D. Cal. Sept. 29, 2015)........................................................................ 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................. 5

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC,
2012 WL 2990766 (N.D. Cal. July 20, 2012) ........................................................................... 9

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015)............................................................................................... 9, 14

*Atik v. Welch Foods, Inc.*, No. 15-CV-5405 MKB,
2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) ................................................................... 10, 23

*Ault v. J.M. Smucker Co.*, No. 13-3409,
2014 WL 1998235 (S.D.N.Y. May 15, 2014)............................................................... 12, 23, 24

*Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc.*,
36 F. Supp. 3d 417 (S.D.N.Y. 2014) ....................................................................................... 18

*Balser v. Hain Celestial Group, Inc.*,
640 F. App'x 694 (9th Cir. 2016)............................................................................................ 10

*Belfiore v. Procter & Gamble Co.*,
94 F. Supp. 3d 440 (E.D.N.Y. 2015)........................................................................................ 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................. 5

*Brown v. Hain Celestial Grp., Inc.*,
913 F. Supp. 2d 881 (N.D. Cal. 2012) ....................................................................................... 9

*Burton v. Hodgson Mill, Inc.*, NO. 16-cv-1081-MJR-RJD,
2017 WL 1282882 (E.D.N.Y. 2017)........................................................................................ 12

*Clemens v. DaimlerChrysler Corp.*,
　534 F.3d 1017 (9th Cir. 2008) ........................................................ 24

*Colucci v. Zoneperfect Nutrition Co.*, No. C-12-2907 SC,
　2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ........................................ 9

*Davidson v. Kimberly-Clark Corp.*, __ F.3d. __,
　2017 WL 4700093 (9th Cir. Oct. 20, 2017) ........................................ 18

*Diaz v. Paragon Motors of Woodside, Inc.*,
　424 F. Supp. 2d 519 (E.D.N.Y. 2006) .............................................. 24

*Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*,
　382 Fed. Appx. 110 (2d Cir. 2010) ................................................ 23

*Fagan v. Neutrogena Corp.*, Civ. No. 5:13–1316 OP,
　2014 WL 92255 (C.D. Cal. Jan. 8, 2014) ........................................... 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
　528 U.S. 167 (2000) ............................................................... 14

*Foman v. Davis*,
　371 U.S. 178 (1962) ............................................................... 25

*Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX,
　2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ........................................ 22

*Forsher v. The J.M. Smucker Co.*,
　Case No. 1:15-cv-07180 (E.D.N.Y. Sept. 27, 2017) ................................ 11

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
　317 F.R.D. 374 (S.D.N.Y. 2016) ................................................... 19

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
　8 F. Supp. 3d 467 (S.D.N.Y. 2014) ........................................... passim

*Goldman v. Bayer AG*, No. 17-cv-0647 PJH,
　2017 WL 3168525 (N.D. Cal. July 26, 2017) ............................... 7, 8, 16

*Goya Foods, Inc. v. Tropicana Prods., Inc.*,
　846 F.2d 848 (2d Cir. 1988) ...................................................... 10

*Henry v. Daytop Vill., Inc.*,
　42 F.3d 89 (2d Cir. 1994) ........................................................ 25

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015) ................................................................. 5

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) ............................................................... 21

*In re Clorox Consumer Litig.*,
   894 F. Supp. 2d 1224 (N.D. Cal. 2012) ............................................................ 22

*In re Frito-Lay N. Am., Inc. All Natural Litig.*, No.12-MD-2413 RLM,
   2013 WL 4647512 (E.D.N.Y. Aug 29, 2013) ............................................. passim

*In re Grand Theft Auto Video Game Consumer Litigation*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ....................................................................... 22

*In re Kind LLC "Healthy & All Natural" Litig.*,
   209 F. Supp. 3d 689 (S.D.N.Y. 2016) ......................................................... 11, 13

*In re Toshiba America HD DVD Marketing & Sales Practices Litigation*,
   No. CIV 08-939 (DRD), 2009 WL 2940081 (D.N.J. Sept. 11, 2009) ................... 23

*In re Trilegiant Corp.*,
   11 F. Supp. 3d 82 (D. Conn. 2014) ............................................................. 22, 23

*Jaghory v. N.Y. State Dep't of Educ.*,
   131 F.3d 326 (2d Cir. 1997) ............................................................................... 5

*Jovel v. i-Health, Inc.*, No. 12-CV-5614 JG,
   2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) .................................................. 20

*Kane ex rel. U.S. v. Healthfirst, Inc.*,
   120 F. Supp. 3d 370 (S.D.N.Y. 2015) .............................................................. 21

*Langan v. Johnson & Johnson Consumer Cos.*,
   95 F. Supp. 3d 284 (D. Conn. 2016) ................................................................. 6

*Langan v. Johnson & Johnson Consumer Cos.*, No. 3:13-cv-1470 JAM,
   2017 WL 985640 (D. Conn. Mar. 13, 2017) ...................................................... 7

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ............................................................................ 20

*Martin v. Tradewinds Bev. Co.*, Case No. CV16-9249 (PSG) (MRWx),
   2017 WL 1712533 (C.D. Cal. Apr. 27, 2017) .............................................. 11, 12

*Martinez v. Capital One Bank, N.A.*, No. 10-CV-8028,
    2015 WL 4270172 (S.D.N.Y. July 13, 2015) ........................................ 17

*Matson v. Bd. of Educ.*,
    631 F.3d 57 (2d Cir. 2011) ................................................................. 5

*Mazza v. American Honda Motor Co.*, ...........................................................
    666 F.3d 581 (9th Cir. 2012) .............................................................. 22

*Morales v. Unilever U.S., Inc.*, No. 2:13-2213,
    2014 WL 1389613 (E.D. Cal. Apr. 9, 2014) .......................................... 9

*Morrison v. YTB Int'l, Inc.*,
    649 F.3d 533 (7th Cir. 2011) .............................................................. 16

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012) ........................................................... 16, 17

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) .......................................................................... 5

*Paulino v. Conopco, Inc.*, No. 14-CV-5145 RML,
    2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ................................ 7, 8, 23

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) .................................................. 9

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013) .............................................. 5, 15

*Reid v. GMC Skin Care USA Inc.*, No. 15-CV-277,
    2016 WL 403497 (N.D.N.Y. Jan. 15, 2016) .......................................... 17

*Ret. Bd. of the Policemen's Annuity & Ben. Fund v. Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014) ............................................................... 17

*Scholder v. Riviana Foods Inc.*, Case No. 16-cv-6002 (ADS) (AKT),
    2017 WL 2773586 (June 23, 2017) ..................................................... 11

*Scholder v. Sioux Honey Association*,
    Case No. 2:16cv5369 (E.D.N.Y. June 27, 2017) ................................... 11

*Scholder v. Topco Holdings*,
    Case No. 2:16cv06028 (E.D.N.Y. Sept. 6, 2017) .................................. 11

*Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 RML,
 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ........................................................... 6

*Singleton v. Fifth Generation, Inc.*, No. 15-CV-474,
 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ...................................................... 23, 25

*Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 MKB,
 2016 WL 5372794 (E.D.N.Y. 2016) ...................................................... 6, 17, 23, 24

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998) ................................................................................................... 16

*Thornton v. Pinnacle Foods Grp. LLC*, No. 4:16-CV-00158 JAR,
 2016 WL 4073713 (E.D. Mo. Aug. 1, 2016) ...................................................... 21, 22

*Tsan v. Seventh Generation, Inc.*, No. 15-cv-00205 JST,
 2015 WL 6694104 (N.D. Cal. Nov. 3, 2015) ........................................................... 10

*Tsirelman v. Daines*,
 794 F.3d 310 (2d Cir. 2015) ...................................................................................... 5

*Vicuna v. Alexia Foods, Inc.*, Civ. No. 11–6119 PJH,
 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) ........................................................... 9

*Williams v. Gerber Prods. Co.*,
 552 F.3d 934 (9th Cir. 2008) ..................................................................................... 8

## STATUTES

Magnuson-Moss Warranty Act,
 15 U.S.C. § 2301 *et seq.* ..................................................................................... 4, 24

Missouri Merchandising Practices Act,
 MO. ANN. STAT. § 407.010 *et seq.* ............................................................................ 21

New York General Business Law section 349 ...................................................... 15, 24

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 8 ......................................................................... 23, 25

Federal Rule of Civil Procedure 12 ........................................................................... 4

Federal Rule of Civil Procedure 15........................................................................... 25

U.S. Constitution, Article III................................................................................ passim

Use of the Term "Natural" in the Labeling of Human Food Products,
   80 Fed. Reg. 69,905 (Nov. 12, 2015)........................................................................ 13

Plaintiff Briana Dube ("Plaintiff") respectfully submits this memorandum of law in opposition to the Motion to Dismiss or, in the Alternative, to Stay the Case by Defendant Rexall Sundown, Inc. ("Defendant"). *See* Mem. Supp. Mot. Dismiss or Stay Case ("Def. Mem.").

For the reasons below, Defendant's motion is without merit, and the Court should deny it.

**<u>Introduction</u>**

Defendant manufactures and sells vitamin and nutritional supplements by using a common deceptive description of the Product[1] — ***NATURALS***. As Defendant concedes, this important description is prominently placed in large script on the front label of each and every Product at issue here. Unfortunately for consumers, this representation is untrue and deceptive, as the Products are not natural, but rather contain synthetic ingredients.

Defendant does not dispute any of these facts. Rather, Defendant makes a number of technical arguments for dismissal, all of which are without merit.

First, Defendant asks this Court to supplant the reasonable consumer's perspective with Defendant's biased, self-interested, opinion and to rule, as a matter of law, that no reasonable consumer could have been misled by the "natural" claims. The Court should reject Defendant's argument. Numerous district courts and appellate courts have held that the factual issue of how a reasonable consumer would interpret a label is not appropriate for determination on a motion to dismiss. *See, e.g.*, *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) ("*Goldemberg*") (rejecting same arguments that Defendant makes here); *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No.12-MD-2413 RLM, 2013 WL 4647512, at *13 (E.D.N.Y. Aug 29,

---

[1] "Product" and "Products" have the same meaning as in the Complaint. ¶ 1. All references herein to "¶__" are to paragraphs in the Complaint, ECF No. 1.

2013) ("*Frito-Lay*") (same). For the same reasons as stated in these decisions, Defendant's motion now should be denied.

Defendant's second argument is that, in the alternative, this matter should be stayed based upon the speculation that the Food and Drug Administration ("FDA") may, or may not, engage in rulemaking in this area. However, the FDA's expertise is not necessary to adjudicate a reasonable consumer's perceptions at the time the Products were advertised and purchased. Moreover, Defendant's argument is based, at most, upon rank speculation that will only cause this case to be delayed.

Defendant's arguments pertaining to standing must also be denied. Defendant concedes that Plaintiff has standing to pursue her individual claims. As case law on the matter shows, whether Plaintiff can pursue claims on behalf of other class members who bought similar products with the same deceptive representation, and on behalf of proposed class members of other states, is an issue for determination on class certification, not a motion to dismiss. Accordingly, Defendant's arguments here are premature, at best, and must be denied.

Finally, Defendant's remaining arguments regarding Plaintiff's express warranty[2] and unjust enrichment claims also must be denied, as they are contradicted by the law.

In sum, Defendant's motion must be denied.

## **Factual Background**

This putative class action seeks to redress Defendant's deceptive and misleading business practices with respect to the marketing and sale of Defendant's Sundown Naturals Adult Gummies. More specifically, Defendant manufactures, sells, and distributes the Products using a marketing

---

[2] Plaintiff withdraws her claims for breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose. *See* ¶¶ 99-112.

and advertising campaign centered around claims that appeal to health-conscious consumers, i.e., that its Products are "Naturals." *See* ¶ 2. This "Naturals" claim is a prominent feature of Defendant's advertising campaign for its gummy Products. ¶ 18. An example of the Products' labeling is pictured below:



¶ 6. The word "Naturals" is emblazoned in large, centrally-located print on the front label of each of the Products, evidencing Defendant's awareness that "Naturals" claims are material to consumers. ¶ 18. Additionally, many of the Products' labels also contain pictures of fruit, further touting the idea that the gummies are natural. ¶ 6. The Products' labels do not indicate in any way that many of the ingredients in the Products are synthetic or attempt to distinguish the natural ingredients from the synthetic ones. Nor is there anything on the label to suggest that the term "Naturals" refers to anything other than the ingredients of the Products. A reasonable consumer viewing each Product's labeling would interpret it as a description of the Product and to mean that

the Product is made from natural ingredients and not synthetic ones. ¶¶ 13-15. In reality, Defendant's Products contain a litany of synthetic ingredients, including: gelatin, citric acid, maltodextrin, dicalcium phosphate, sodium citrate, lactic acid, tricalcium phosphate tocopherol (acetate), and ascorbic acid. ¶ 6.

Plaintiff purchased the Products in 2016 in reliance on Defendant's "Naturals" representations. ¶¶ 31-32. Had Defendant not made the false, misleading, and deceptive representation that the Products were "Naturals," Plaintiff would not have purchased the Products at the price she paid. *Id*. As a result of Defendant's misrepresentations, the Products that Plaintiff and the putative class members received were worth less than the Products for which they paid, and they were injured in fact and lost money as a result of Defendant's improper conduct. ¶¶ 23-26, 31-32. Given Defendant's demonstrably false representations and its deceptive business practices, Plaintiff and the putative class members seek relief under statutory consumer protection laws. ¶¶ 49-79. Plaintiff and the proposed class members also assert claims premised on breach of express warranty, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA"), and unjust enrichment. ¶¶ 80-98, 113-19.

As explained herein, Defendant's motion to dismiss the Complaint or to stay the action must be denied. The arguments Defendant advances in its memorandum of law either have been explicitly rejected by courts in this Circuit or are premised on a fundamental misunderstanding of the applicable law.

## Legal Argument

### I.   Plaintiff's Claims Are Judged by a Reasonable Consumer Standard

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences

from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff's Complaint alleges Defendant's "Naturals" labeling is materially misleading. The New York Court of Appeals has established an objective standard for determining whether acts or practices are materially deceptive or misleading to "a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). The reasonable consumer determination is generally a question of fact, which is not appropriate for a motion to dismiss. *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015); *Goldemberg*, 8 F. Supp. 3d at 478; *see also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or practice is deceptive is usually a question of fact."). As demonstrated below, Plaintiff's Complaint plausibly alleges that a reasonable consumer would be misled by Defendant's deceptive "Naturals" labeling.

### A.    Plaintiff Plausibly Alleges That Defendant's "Naturals" Label Deceives Consumers

Defendant advances the tenuous argument that its "Naturals" labeling cannot, *as a matter of law*, deceive a reasonable consumer into believing that the Products contain exclusively natural ingredients. Def. Mem. 5-10. This argument, however, is contrary to the case law in this Circuit, which holds that reasonable consumers may interpret the term "natural" to mean that **all**

ingredients in a product are natural. *See, e.g.*, *Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 RML, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) (rejecting defendant's argument that, as a matter of law, no reasonable consumer could be misled by the representation "Natural Brew"); *Frito-Lay*, 2013 WL 4647512, at *13 (holding that "what a reasonable consumer would believe the term 'natural' to mean cannot be resolved on [a] motion [to dismiss]," as it is a "factual dispute"). That the Products' labeling does not explicitly state that the Products are "all natural" or "100% natural" is irrelevant.

*Goldemberg* is on point. There, the plaintiff alleged the trademarked term "Active Naturals" was deceptive because it conveyed to consumers that the product was "completely natural," yet the products at issue contained synthetic ingredients. The defendant argued that the plain language of the phrase "Active Naturals" conveys to consumers only that the products contain active, natural ingredients—not that they are "100% Natural" and contain no synthetic ingredients. The court rejected the defendant's argument and declared it "cannot find as a matter of law that no reasonable consumer could be misled by these advertisements into believing the products contain exclusively natural ingredients." *Goldemberg*, 8 F. Supp. 3d at 480.

Similarly, other courts in this Circuit have found that reasonable consumers can interpret the term "natural" to mean the product does not contain *any* synthetic ingredients. *See, e.g.*, *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 MKB, 2016 WL 5372794, at *14 (E.D.N.Y. 2016) (denying motion to dismiss because reasonable consumers could interpret the phrases "Natural Whole Herb" and "Natural Menopausal Relief" to mean the products contain only natural ingredients); *Langan v. Johnson & Johnson Consumer Cos.*, 95 F. Supp. 3d 284, 289 (D. Conn. 2016) (holding that reasonable consumers could interpret the phrase "100% naturally-sourced sunscreen ingredients" on a sunscreen product label to mean that the whole product was natural);

*see also Langan v. Johnson & Johnson Consumer Cos.*, No. 3:13-cv-1470 JAM, 2017 WL 985640, at *9 (D. Conn. Mar. 13, 2017) (holding that bath wash and shampoo labeled as containing a "Natural Oat Formula," but which actually contained synthetic chemicals, were deceptively labeled because "reasonable consumers could interpret the term 'Natural Oat Formula' to imply that the entire product was natural").

Defendant's argument that a brand name cannot deceive a reasonable consumer is equally baseless. Defendant fails to cite a single case that distinguishes a brand name like "Sundown Naturals" from other types of product labeling or suggests that a brand name is somehow less likely to deceive consumers. Indeed, this District Court has held that trademarks and brand names that are nearly identical to the one at issue in this case (i.e., a company name followed by the term "naturals") can be deceiving to a reasonable consumer. *See Goldemberg*, 8 F. Supp. 3d at 480 ("[The] Court cannot find as a matter of law that no reasonable consumer could be misled by [the trademark 'Aveeno Naturals'] into believing the products contain exclusively natural ingredients."); *Paulino v. Conopco, Inc.*, No. 14-CV-5145 RML, 2015 WL 4895234, at *5 (E.D.N.Y. Aug. 17, 2015) (denying defendant's motion to dismiss claim involving personal care products sold under the brand name "Suave NATURALS" that were filled with unnatural, synthetic ingredients).

Contrary to Defendant's argument, *Goldman v. Bayer AG*, No. 17-cv-0647 PJH, 2017 WL 3168525 (N.D. Cal. July 26, 2017), does not involve "a theory of liability almost identical to plaintiff's theory here." Def. Mem. 7. In that case, plaintiff alleged the vitamin brand name "One A Day," together with the statement "70 Gummies," misled consumers into believing each bottle contained 70 days' worth of multivitamins. The Court rejected that interpretation as unreasonable because the term "One A Day" did not constitute a directive to take one pill per day or a description

of the contents of the bottle. *Goldman*, 2017 WL 3168525, at *6-7. Additionally, the back label of the bottle described what nutrients were included in the vitamins and in what quantity, and the labeling clearly stated that the serving size was two pills per day. *Id.* The court held that reasonable consumers of multivitamins would consult the back label to discover that information and thus would not be deceived. *Id* at *7.

Here, in contrast, the term "Naturals" alone is misleading, and the labels contain no clarifying language. As the courts recognized in *Goldemberg* and *Paulino*, *supra*, the term "naturals" does, in fact, represent to reasonable consumes that a product contains only natural ingredients. Further, unlike *Goldman*, Defendant's labels do not explain that many of the ingredients in the Products are synthetic, or attempt to distinguish the natural ingredients from the synthetic ones. ¶¶ 13-15. Even if such fine print did exist on Defendant's Products, courts in this Circuit have held that consumers are not expected to look beyond misleading labeling in search of the true meaning of a defendant's representations. *Ackerman v. Coca-Cola Co.*, Case No. cv-09-0395 (JG) (RML), 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010) ("*Ackerman*") ("Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008))). A single, readily distinguishable, case from another Circuit, which does not involve a "natural" claim, does not outweigh the numerous Second Circuit decisions supporting Plaintiff's position that Defendant's labeling is plausibly deceptive to a reasonable consumer.

Indeed, in cases with claims similar to those asserted in Plaintiff's Complaint where allegations centered on a false or misleading "natural" claim, courts around the country have repeatedly denied motions to dismiss. *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753

(9th Cir. 2015) (reversing a district court decision to dismiss a consumer fraud action against a manufacturer for its personal care products that claimed to be "all natural" or "pure natural"); *Morales v. Unilever U.S., Inc.*, No. 2:13-2213, 2014 WL 1389613, at *7-8 (E.D. Cal. Apr. 9, 2014) (denying motion to dismiss claims involving shampoos and conditioners labeled "naturals"); *Fagan v. Neutrogena Corp.*, Civ. No. 5:13–1316 OP, 2014 WL 92255, at *2 (C.D. Cal. Jan. 8, 2014) (denying motion to dismiss when defendant claimed its sunscreen was "100% naturally sourced"); *Colucci v. Zoneperfect Nutrition Co.*, No. C-12-2907 SC, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012) (denying motion to dismiss challenge to "all natural" claim on nutrition bars).[3]

### B.     It Is Plausible That Reasonable Consumers Believe Defendant's Gummy Products Are Natural

Next Defendant contends that reasonable consumers could not be deceived by the Products' labeling because gummies, by their very nature, are synthetic and not derived from the earth. This argument only highlights the brazen nature of Defendant's misrepresentation and is, again, supported only by a single, non-persuasive outlier decision from Los Angeles. Defendant relies on *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013), where the district court held that a reasonable consumer could not be deceived by the term "All Natural" on a package of pasta because pasta does not exist in nature. *Pelayo* is an outlier and has been heavily criticized. A subsequent Ninth Circuit decision squarely rejected the reasoning in *Pelayo*, holding that whether an advertisement is deceptive or misleading is a question of fact to be left to a jury, and

---

[3] *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 899 (N.D. Cal. 2012) (denying motion to dismiss challenge to face and body products labeled pure, natural and organic); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *11-13 (N.D. Cal. July 20, 2012) (denying motion to dismiss challenge to "all natural" claim on ice cream); *Vicuna v. Alexia Foods, Inc.*, Civ. No. 11–6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (denying motion to dismiss challenge to "all natural" designation for potato snack products).

that a reasonable consumer could interpret the term "natural" to mean free from synthetic ingredients. *Balser v. Hain Celestial Group, Inc.*, 640 F. App'x 694 (9th Cir. 2016) (unpublished); *see also Tsan v. Seventh Generation, Inc.*, No. 15-cv-00205 JST, 2015 WL 6694104, at *5 (N.D. Cal. Nov. 3, 2015) ("*Pelayo*'s reasoning has been heavily criticized by other courts. The Court agrees with these criticisms and declines to adopt the reasoning in *Pelayo*." (citing three additional district court decisions critical of *Pelayo*)). As these criticisms and the Second Circuit case law above make clear, it is not unreasonable for a consumer to interpret the term "Naturals" on a product's labeling to mean free from synthetic ingredients. This is especially true in the context of Defendant's Products, which are fruit flavored and prominently feature pictures of fruit on the front label, further supporting the inference that the Products are natural. *See Atik v. Welch Foods, Inc.*, No. 15-CV-5405 MKB, 2016 WL 5678474, at *10 (E.D.N.Y. Sept. 30, 2016) (holding that a reasonable consumer could expect a fruit snack to contain a significant amount of fruit, especially where the packaging and labeling emphasize the presence of fruit in the products).

## II.     Plaintiff's Claims Should Not Be Stayed

Contrary to Defendant's argument, the primary jurisdiction doctrine does not warrant a stay in this case. "The primary jurisdiction doctrine is 'relatively narrow' in scope." *Frito-Lay*, 2013 WL 4647512, at *7 (citing *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988)). Here, although the issue may be within the FDA's discretion, this case does not involve technical or policy considerations within the agency's particular field of expertise, there exists no substantial danger of inconsistent rulings, and it is uncontested that no prior application to the agency has been made.

The question this Court is presented with is not whether the ingredients in the Products are unnatural, requiring the FDA's expertise. Indeed, Defendant concedes its Products contain

unnatural ingredients under the FDA's current guidance on the term "natural" (i.e., glycerin, citric acid, lactic acid, etc.).[4] *See* Def's Mem. 2-3. Regardless of any possible FDA definition for the term "natural," it flies in the face of reason to suggest that the FDA would alter its definition to include the artificial and synthetic ingredients Defendant uses in its Products. *See Martin v. Tradewinds Bev. Co.*, Case No. CV16-9249 (PSG) (MRWx), 2017 WL 1712533, at *4 (C.D. Cal. Apr. 27, 2017) (denying application of the primary jurisdiction doctrine where the products contain color additives, which are artificial or synthetic ingredients pursuant to the FDA's current "natural" standards).[5]

    *Goldemberg* is on point. That case involved products, sold under the brand "Active Naturals," that contained various synthetic ingredients. The court found that (1) it was well suited to determine whether "Active Naturals" misleads consumers into believing that all ingredients in the product are "natural"; (2) the FDA was not contemplating the same issue regarding the term "natural" as applied to the case at hand; and (3) no prior application had been made by the FDA.

---

[4] "The FDA has considered the term 'natural' to mean that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in that food." *"Natural" on Food Labeling*, FDA.GOV (Sept. 14, 2016), https://goo.gl/MhuoaM.

[5] Thus, the present case is unlike every case Defendant cites for the proposition that courts "routinely" stay consumer class actions asserting "natural" labeling claims. None of the cases Defendant cites involve products containing admittedly artificial and synthetic ingredients. Instead, they involve GMO ingredients or ingredients that derive from allegedly unnatural food production or manufacturing process methods. *See In re Kind LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d 689, 691-692, 695 (S.D.N.Y. 2016) (KIND products containing *inter alia* GMOs and other highly processed ingredients); *see also Forsher v. The J.M. Smucker Co.*, Case No. 1:15-cv-07180 (E.D.N.Y. Sept. 27, 2017), at ECF Nos. 32, 38 (peanut butter containing sugar beets derived from genetically-modified seed varieties); *Scholder v. Topco Holdings*, Case No. 2:16cv06028 (E.D.N.Y. Sept. 6, 2017), at ECF Nos. 1, 21 (granola containing ingredients derived from an unnatural herbicide); *Scholder v. Sioux Honey Association*, Case No. 2:16cv5369 (E.D.N.Y. June 27, 2017) (honey containing ingredients derived from an unnatural herbicide); *Scholder v. Riviana Foods Inc.*, Case No. 16-cv-6002 (ADS) (AKT), 2017 WL 2773586, at *4 (June 23, 2017) (pasta containing traces of an unnatural herbicide).

*Id.* at 476-78. As a result, the court denied application of the primary jurisdiction doctrine. Here, the Court is faced with a nearly identical factual scenario—with Defendant using the name brand "Sundown Naturals" to mislead consumers into believing the Products are natural, when the products are, in fact, not natural. The Court should adopt the same ruling. Certainly, in addition to *Goldemberg*, many other courts similarly have denied the application of the primary jurisdiction doctrine. *See, e.g.*, *Frito-Lay*, 2013 WL 4647512, at *8 ("[T]his case is far less about science than it is about whether a label is misleading, and the reasonable-consumer inquiry upon which some of the claims in this case depends is one to which courts are eminently well suited, even well versed."); *Ackerman*, 2010 WL 2925955, at *14; *see also Martin*, 2017 WL 1712533, at *4; *Ault v. J.M. Smucker Co.*, No. 13-3409, 2014 WL 1998235, at *4-5 (S.D.N.Y. May 15, 2014).

Defendant contends that "allowing individuals courts to make judicial determinations as to the appropriate definition of 'natural' on food labels" is inappropriate. Def. Mem. 14. However, there is no need for this Court to make findings as to what the term "natural" means in the context of every food label. To the contrary, Plaintiff simply alleges that it is deceptive to label the Products as "Naturals" because they contain unnatural ingredients. As such, the factfinder need only determine that a reasonable consumer would be deceived by the "natural" representation in this specific instance. This Court need not construct an overarching rule to apply to all uses of the term "natural" on food or supplement labels. *See Goldemberg*, 8 F. Supp. 3d at 478 (denying the application of primary jurisdiction to "Active Naturals" products); *Martin*, 2017 WL 1712533, at *4 (denying the application of primary jurisdiction to "natural" tea products).

It also is far from certain whether the FDA ever will regulate the term "natural," let alone promulgate a rule that clarifies this case. *See Burton v. Hodgson Mill, Inc.*, NO. 16-cv-1081-MJR-RJD, 2017 WL 1282882, at *8 (E.D.N.Y. 2017) (court finding not persuasive that the FDA will

issue any guidance given "the FDA last issued a call for proposals on the topic in the fall of 2016 and has not yet issued any further timeline or steps"). Defendant represents to the Court that the FDA is promulgating regulations on the word "natural" in brand names. Def. Mem. 11. However, what Defendant fails to mention is that the FDA did not call for comments on this specific issue. Rather, the FDA requested "information and comments on the use of the term 'natural' in the labeling of human food products, including foods that are genetically engineered or contain ingredients produced through the use of genetic engineering." Use of the Term "Natural" in the Labeling of Human Food Products, 80 Fed. Reg. 69,905, 69,905 (Nov. 12, 2015). The FDA's request for comments specifically sought information on 16 different issues surrounding "natural" labeling. *Id.* at 69,908-09. Notably, none of the issues pertains to whether the term "natural" can be used in a brand name when the Products' ingredients are indisputably unnatural. *Id.* The issue of "natural" in brand names was raised in a handful of comments submitted *sua sponte* by organizations, out of over 7,600 comments that were received by the FDA. It is unreasonable to expect the FDA to issue rulemaking on a topic on which it did not seek comments.

Moreover, even if the possible rulemaking addressed Plaintiff's claims, which it unquestionably does not, the likely delay in the process weighs against application of the primary jurisdiction doctrine here. Courts in the Second Circuit have declined to refer similar matters to the FDA in part because of the potential delay. *See, e.g.*, *In re Kind*, 209 F. Supp. 3d at 696-97; *Frito-Lay*, 2013 WL 4647512, at *8-9. Indeed, the Trump administration's plans to "streamline the FDA" and get rid of many regulations will impede the FDA's ability to issue new rules and regulations.[6] On January 30, 2017, President Trump signed into effect an executive order requiring "federal agencies and departments identify at least two existing federal rules that can be eliminated

---

[6] *See* https://goo.gl/RRYWwC (last visited Oct. 30, 2017).

every time they issue a new regulation."[7] This executive order likely will slow down—if not stop—the adoption of new regulations and create a lengthier rulemaking process for the FDA. Indeed, we are well over ten months into the Trump administration, and the FDA has given zero indication of its renewed interest in "natural" labeling, let alone the use of "natural" in connection with products with synthetic ingredients. "Common sense tells us that even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." *Astiana*, 783 F.3d at 761.

For all the foregoing reasons, Plaintiff respectfully requests the Court to deny Defendant's motion to stay.

## III.    Defendant's Various Standing Arguments Are Premature and Wrong

### A.    Whether Plaintiff Can Represent Purchasers of Other Products Is an Issue for Class Certification, Not a Motion to Dismiss

To satisfy Article III's case or controversy requirement, Plaintiff simply must allege she has suffered an injury in fact caused by Defendant, which is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Contrary to Defendant's claim that "Plaintiff makes multiple seemingly contradictory and vague allegations of injury," Def. Mem. 16-17, n. 13, Plaintiff sufficiently identifies how she was harmed. Plaintiff states in her Complaint that she and the proposed class members "paid for Products that were 'Natural' but received Products that were not 'Natural.'" ¶ 25. Plaintiff also alleges that "Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a 'Natural' label." ¶ 26. Plaintiff thus alleges that she "did not did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions." ¶ 27. These allegations properly establish redressable injury. *See, e.g.*, *Goldemberg*, 8

---

[7] *See* https://goo.gl/ymNRnR (last visited Oct. 30, 2017).

F. Supp. 3d at 480-81 ("[A] plaintiff may properly allege [injury], claiming that 'the price of the product was inflated as a result of the defendant's deception.'"); *Ackerman*, 2010 WL 2925955, at *23 ("Injury is adequately alleged under [New York General Business Law section] 349 . . . by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations.").

Defendant next argues Plaintiff does not have Article III standing to bring claims concerning Products she did not purchase herself. Def. Mem. 16-17. However, cases in the Second Circuit have foreclosed Defendant's argument. As explained in *Frito-Lay*, "because plaintiffs have satisfied the Article III standing inquiry, their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion." *Frito-Lay*, 2013 WL 4647512, at *10.

*Quinn v. Walgreen Co.* is on point. At issue in *Quinn* was whether claims the plaintiff brought on behalf of consumers of products that the plaintiff had not purchased had to be dismissed on a motion to dismiss. The court rejected the defendant's argument that the plaintiff lacked Article III standing, and held that:

> There is no question plaintiffs have standing to assert claims relating to the product they did purchase. Further, there are substantial similarities between all of defendants' Glucosamine Supplements, and the alleged misrepresentations on the labels of the Glucosamine Supplements are nearly identical. Therefore, the Court finds the appropriate time to consider whether plaintiffs can bring claims on behalf of purchasers of all of the various Glucosamine Supplements is at the class certification stage, not on a motion to dismiss

*Quinn*, 958 F. Supp. 2d at 541.

As in *Quinn*, there are substantial similarities between all of Products in that they are all gummy nutritional supplements with similar packaging. ¶ 6. Moreover, the allegations here are based upon ***the exact same misrepresentation*** for all the Products. Therefore, the Complaint

15

adequately alleges that the Products are sufficiently similar for the issue of standing to be deferred to the class certification stage.

### B. Whether Plaintiff Can Represent Out of State Residents Is an Issue for Class Certification, Not a Motion to Dismiss

Defendant concedes Plaintiff has standing to pursue his New York claims. *See* Def. Mem. 18. Defendant contests, however, that Plaintiff has standing to represent the claims of consumers who reside in other states. The question of whether Plaintiff may pursue claims for proposed class members under the laws of states in which she does not reside does not implicate the Court's power to adjudicate this case under Article III. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case."). In other words, "[a]pplication of choice-of-law principles has nothing to do with standing." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011).

The Second Circuit case of *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA-IBEW*"), is controlling. In that case, the Second Circuit held that "to establish Article III standing in a class action for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied . . . ." *NECA-IBEW*, 693 F.3d at 159. The Second Circuit explained:

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

*Id.* at 162 (alteration, internal quotation marks, and citations omitted). After standing is established, "the inquiry shift[s] to a class action analysis." *Id.*; *see also Ret. Bd. of the Policemen's Annuity &*

*Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014)

(discussing *NECA-IBEW* and stating that "[t]he core question is whether a plaintiff who has a

personal stake in proving her own claims against the defendant has a sufficiently personal and

concrete stake in proving other, related claims against the defendant")).

   *Sitt v. Nature's Bounty, Inc.* also is on point. In *Sitt,* the plaintiff alleged that the defendant

had deceptively labeled its dietary supplement products marketed to combat menopause as

"natural," when in fact they were not because they contained a synthetic ingredient. *Sitt*, 2016 WL

5372794, at *1. The plaintiff brought the action on behalf of herself and a proposed class of

residents from a number of different states. The defendant in *Sitt* moved to dismiss and argued that

the plaintiff, as a New York resident, did not have standing to bring claims on behalf of consumers

from other states. *Id.* In rejecting the defendant's' argument, the court stated:

> Here, Defendants do not contest that Plaintiff has Article III standing to assert
> claims under New York law as to all Defendants, and concede that Plaintiff has
> sufficiently pled that she purchased and was harmed by the Product in New York.
> Thus, because Plaintiff has standing to assert a claim directly against each of the
> named Defendants, Plaintiff has satisfied the Article III standing requirement for
> class actions. Defendants argue that Plaintiff bears a burden within the Article III
> analysis to further establish standing to bring claims under the law of every other
> state in the nationwide class by providing "particularized allegations" of the claims
> of consumers in other states. However, based on the Second Circuit's clear
> pronouncement of Article III standing in *NECA-IBEW*, Plaintiff has no further
> burden to demonstrate Article III standing. Plaintiff has sufficiently stated a
> cognizable injury by Defendants and has therefore established Article III standing.

*Id.* at *4; *see also Reid v. GMC Skin Care USA Inc.*, No. 15-CV-277, 2016 WL 403497, at *4

(N.D.N.Y. Jan. 15, 2016) ("Article III standing and class standing are different issues that require

separate consideration; class standing is often considered at the class certification stage of the

litigation.") (collecting cases); *Martinez v. Capital One Bank, N.A*., No. 10-CV-8028, 2015 WL

4270172, at *3 (S.D.N.Y. July 13, 2015) ("[T]he Second Circuit considers the questions of Article

III, statutory, and class standing as distinct."); *Bais Yaakov of Spring Valley v. Houghton Mifflin*

17

*Harcourt Publishers, Inc.*, 36 F. Supp. 3d 417, 420 (S.D.N.Y. 2014) ("Article III standing is distinct from the issue of 'class standing,' i.e., standing to assert claims on behalf of others . . . .").

Accordingly, Defendant's motion to dismiss the claims Plaintiff seeks to bring on behalf of consumers from other states for "lack of standing" must be denied.

### C.     Plaintiff Has Standing to Pursue Injunctive Relief

The only appellate court to squarely address the issue of whether a plaintiff has standing to pursue injunctive relief when that plaintiff has become aware the representations at issue are deceptive is the Ninth Circuit in its recent decision, *Davidson v. Kimberly-Clark Corp.*, __ F.3d. __, 2017 WL 4700093 (9th Cir. Oct. 20, 2017). Based on the reasoning of the Ninth Circuit and the decisions in this Circuit, Defendant's argument should now be rejected.

In *Davidson*, the plaintiff alleged that the defendant had sold products to the plaintiff and other consumers by using deceptive and misleading representations on the packaging of the products. *Id.* at *2. The plaintiff sued the defendant under consumer protection statutes similar to the ones at issue here. *Id.* The defendant moved to dismiss, arguing, like the Defendant does here, Def. Mem. 24, that the plaintiff did not have standing to pursue claims for injunctive relief because the plaintiff now was apprised of the fraud when she filed her complaint and hence could no longer be injured based upon future conduct. The district court granted the defendant's motion.

The Ninth Circuit reversed the district court and held that the plaintiff ***did have standing to pursue injunctive relief***. *Davidson*, 2017 WL 4700093, at *9. The Ninth Circuit explained:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.

*        *        *        *        *

18

Were injunctive relief unavailable to a consumer who learns after purchasing a product that the product's label is false, . . . consumer protection laws would be effectively gutted . . . [B]y finding that these plaintiffs fail to allege Article III standing for injunctive relief, we risk creating a "perpetual loop" of plaintiffs filing their state law consumer protection claims in . . . state court, defendants removing the case to federal court, and the federal court dismissing the injunctive relief claims for failure to meet Article III's standing requirements. On our Article III standing analysis, fully supported for the reasons we have explained by established standing principles, this "perpetual loop" will not occur.

*Id.* (citations omitted).

Recent decision from courts within the Second Circuit follow this same logic, holding that plaintiffs in consumer protection cases, such as that at issue here, do have standing to pursue injunctive relief. *See, e.g.*, *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016) ("*Goldemberg II*"); *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) ("*Ackerman II*"). Accordingly, Defendant's motion to dismiss Plaintiff's injunctive relief claims must be denied.

**IV.     Plaintiff Has Sufficiently Pled Her Consumer Protection Claims under the Laws of Forty-One States and the District of Columbia**

**A.     The Complaint Satisfies Federal Rule of Civil Procedure 9(b)**

Defendant argues the Court should dismiss Plaintiff's claims under the consumer protection laws of 41 states and the District of Columbia because the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to many of the claims, and the Complaint does not meet the Rule 9(b) standard. Def. Mem. 19-20. According to Defendant, the Complaint does not satisfy Rule 9(b) because Plaintiff has not specifically identified the misrepresentations upon which she relied and has not connected them to her injury. *Id.* at 20. Defendant also argues the Complaint does not meet Rule 9(b) because Plaintiff does not allege which product she purchased, how she was deceived, or how the product failed to live up to her expectations. *Id.* The Court

should reject Defendant's arguments.

It is immaterial whether Rule 9(b) applies to any particular consumer protection claim that Plaintiff has asserted because the Complaint satisfies Rule 9(b). *See Jovel v. i-Health, Inc.*, No. 12-CV-5614 JG, 2013 WL 5437065, at *11 (E.D.N.Y. Sept. 27, 2013). Under that Rule, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To comply with Rule 9(b)'s particularity requirements, "the complaint must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).

Here, Plaintiff (1) alleges Defendant's representations that the Products are "Naturals" are fraudulent, (2) identifies Defendant as the speaker, (3) states that the representations are made on a prominent location on the Product labeling and have been made throughout the "Class Period" (which the Complaint defines as "the applicable statute of limitations period"), and (4) explains that the "Naturals" claims are fraudulent because the Products contain synthetic ingredients. ¶¶ 1-4, 6-11, 18, 31-32. The Complaint provides a detailed list of the Products at issue, ¶ 1, and provides a chart that contains images of the Product labels (which shows the "Naturals" representations at issue) and that specifically identifies the synthetic ingredients in each Product, ¶ 6. The Complaint also details why each challenged ingredient is synthetic and not "natural." ¶ 7. Plaintiff alleges Defendant's conduct injured her because she purchased the Products at an inflated, premium price on account of Defendant's deceptive "Naturals" representations, when she would not have done so had she known the truth, i.e., that the Products contain synthetic ingredients. ¶¶ 25-26, 31-32. While Plaintiff does not specify which Products she purchased, the Products are all substantially

similar, *see supra* Section III.A, and as a result, Plaintiff's allegations are sufficient to "give notice" to Defendant and "enable [it] to prepare a responsive pleading," *see Kane ex rel. U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 383 (S.D.N.Y. 2015). Accordingly, the Complaint satisfies Rule 9(b). *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 465-66, 471-72, 474, 476 (E.D.N.Y. 2013).

### B.      The Court Should Reject Defendant's Conclusory Argument Concerning Differences among the States' Consumer Protection Laws

Defendant also argues the Court should dismiss Plaintiff's claims under the consumer protection laws of 41 states and the District of Columbia because the laws "differ in relevant respects." Def. Mem. 20-21. The Court should reject Defendant's argument.

Defendant's argument is conclusory and lacks detailed, fact-based points concerning why the consumer protection laws at issue are materially different on the facts of this case. Defendant asserts only one difference, in a footnote, between the consumer protection laws at issue. Def. Mem. 20 n.16. Without citing any case law, Defendant argues the Missouri Merchandising Practices Act, MO. ANN. STAT. § 407.010 *et seq.* ("MMPA"), differs from the other consumer protection laws at issue because it requires Plaintiff to allege an "ascertainable loss." *Id.* Defendant, however, fails to elaborate on how the MMPA's "ascertainable loss" requirement differs materially from the requirements of the other consumer protection statutes at issue, based on the facts of the case at bar. *See id.* Instead, Defendant argues Plaintiff has not alleged an "ascertainable loss." *Id.*

Defendant is wrong. Plaintiff's allegations that she paid a price premium in reliance on Defendant's deceptive "Naturals" claim are sufficient to allege an "ascertainable loss" under the MMPA. *Thornton v. Pinnacle Foods Grp. LLC*, No. 4:16-CV-00158 JAR, 2016 WL 4073713, at *1, *3-4 (E.D. Mo. Aug. 1, 2016) (denying motion to dismiss plaintiff's MMPA claim where plaintiff alleged she paid a premium price for defendant's muffin mix product due to the product's false and misleading "Nothing Artificial" labeling). "It is not for the Court to determine on a

motion to dismiss precisely what damages, if any, Plaintiff may be entitled to." *Id.* at *4.

*In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139, 146 (S.D.N.Y. 2008) ("*Grand Theft Auto*"), which Defendant cites, Def. Mem. 20, is inapposite. In *Grand Theft Auto*, the court decertified a settlement class on predominance grounds, based on a detailed, case-specific factual analysis, including several conflict-of-law analyses. *Grand Theft Auto*, 251 F.R.D. at 145-62. Defendant does not make a conflict-of-law argument and does not undertake a detailed, case-specific factual analysis.

Similarly, Defendant's reliance upon *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), is misplaced. *See* Def. Mem. 20-21. Decisions subsequent to *Mazza* have rejected arguments that simply cite *Mazza* without conducting a case-specific factual analysis, like Defendant's argument here. *E.g.*, *Arroyo v. TP-Link USA Corp.*, No. 5:14-CV-04999-EJD, 2015 WL 5698752, at *4 (N.D. Cal. Sept. 29, 2015) ("Reliance on *Mazza* without discussion regarding the conflict of laws and the factors of the governmental interest test is insufficient to warrant dismissal.").[8] In *Mazza* itself, the district court undertook a detailed, case-specific factual analysis at the class certification stage, rather than the pleading stage, and the Ninth Circuit limited its holding to "the facts and circumstances of this case." *Mazza*, 666 F.3d at 594.

Defendant's citation to *In re Trilegiant Corp.*, 11 F. Supp. 3d 82 (D. Conn. 2014), *see* Def. Mem. 21, is also off point because in that case, the plaintiffs, in a footnote in their complaint, "merely list[ed] several other states' consumer protection statutes without explaining how those statutes relate[d] to the Defendants' alleged conduct in [the] case." *In re Trilegiant Corp.*, 11 F. Supp. 3d at 124. Here, by contrast, Plaintiff does tie Defendant's alleged violations of the consumer

---

[8] *See also Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *3-4 (C.D. Cal. Apr. 9, 2014) (rejecting analysis that "simply cit[ed] *Mazza*" as "conclusory"); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012).

protection laws of 41 states and the District of Columbia to Defendant's conduct. For example, Plaintiff alleges Defendant violated these consumer protection laws by making the material representation that the Products are "Naturals," when they are not, and in reliance upon this representation, Plaintiff and the putative class members paid a premium price for the Products. ¶¶ 73-77. Consequently, *In re Trilegiant Corp.* is inapposite.[9]

## V.       Plaintiff Has Stated a Claim for Breach of Express Warranty

Contrary to Defendant's characterization, Def. Mem. 22, to prevail on a breach of express warranty claim under New York law, a plaintiff simply must show "an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon." *Atik*, 2016 WL 5678474, at *11 (quoting *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 Fed. Appx. 110, 111-12 (2d Cir. 2010)). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. LAW § 2-313(1)(b). Here, Plaintiff alleges Defendant's prominent use of "Naturals" on the Products' labeling promises that the Products contain only natural ingredients. Importantly, "[w]hether Plaintiff's interpretation of the label was erroneous or reflected a promise made by Defendant necessarily depends on what a reasonable consumer would believe." *Singleton v. Fifth Generation, Inc.*, No. 15-CV-474, 2016 WL 406295, at *11 (N.D.N.Y. Jan. 12, 2016). "What a reasonable consumer's interpretation of a seller's claim might be is generally an issue of fact which is not appropriate for decision on a motion to dismiss." *Sitt*, 2016 WL 5372794, at *15 (quoting *Paulino.*, 2015 WL 4895234, at *2); *Ault*, 2014 WL 1998235, at *6 ("[I]t cannot be said that a reasonable consumer cannot interpret

---

[9] Defendant cites *In re Toshiba America HD DVD Marketing & Sales Practices Litigation*, No. CIV 08-939 (DRD), 2009 WL 2940081 (D.N.J. Sept. 11, 2009) ("*Toshiba*"), *see* Def. Mem. 21, but that case is off point because the plaintiffs did not contest the defendants' assertion that their pleading failed to satisfy Federal Rule of Civil Procedure 8. *Toshiba*, 2009 WL 2940081, at *14.

'All Natural' as a factual claim about Crisco Oil."); *Goldemberg*, 8 F. Supp. 3d at 483 (holding that because the court was unable to determine as a matter of law that the statements at issue were not misleading under New York General Business Law section 349, it was not appropriate to determine they were misleading for the plaintiffs' warranty claim). Defendant's Product labels make promises of natural ingredients, which likely deceive a reasonable consumer because, in fact, the gummies are made of synthetic ingredients. Therefore, as the courts did in *Sitt*, *Ault*, and *Goldemberg*, this Court should deny Defendant's motion to dismiss Plaintiff's express warranty claim.

## VI.   Plaintiff Has Stated a Claim for Violation of the Magnuson-Moss Warranty Act

While the MMWA is a federal statute, it "merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages." *Sitt*, 2016 WL 5372794, at *17. "Claims under the [MMWA] stand or fall with [plaintiffs'] express and implied warranty claims under state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) (holding breach of express warranty under the MMWA coextensive with New York state law). Here, because Plaintiff has adequately pled a breach of express warranty claim, her MMWA claim should survive as well.

Defendant suggests, however, that to state a claim for violation of the MMWA, "a statement must affirm that the product is 'defect free' or that it 'will meet a *specified level of performance* over a *specified period of time*'" and argues that "Sundown Naturals" does not make these claims. Def. Mem. 21-22. However, recent New York cases explain that whether a statement is sufficient to constitute a "written warranty" subject to the MMWA is a question of fact, not appropriate for a motion to dismiss. *See, e.g.*, *Sitt*, 2016 WL 5372794, at *18 (denying motion to

24

dismiss express warranty claims under either New York law or the MMWA because whether a reasonable consumer could be misled by the "natural" language is not a question of law); *Singleton*, 2016 WL 406295, at *11 (finding that because plaintiff stated claim under New York law that defendant's vodka labels could mislead a reasonable consumer, the plaintiff had stated a plausible breach of express warranty claim). For the foregoing reasons, the Court should deny Defendant's motion to dismiss Plaintiff's MMWA claim.

## VII.   Plaintiff Has Stated a Claim for Unjust Enrichment

Defendant makes two arguments against Plaintiff's unjust enrichment claim. Both are wrong and should be denied. Defendant first argues that "[b]ecause plaintiff's deception claims fail . . . plaintiff's unjust enrichment claims should be dismissed as well." Def. Mem. 23-24. But as seen above, the deception claims do not fail. Defendant's second argument is that the unjust enrichment claim must be dismissed as being duplicative of the other claims in the action. Def. Mem. 23. However, under Rule 8(d)(2), "a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc*., 42 F.3d 89, 95 (2d Cir. 1994). Because Plaintiff may plead her unjust enrichment claims in the alternative to her other claims, and questions of fact remain as to all of Plaintiff's claims, the Court should decline to dismiss Plaintiff's unjust enrichment claim.

## <u>Conclusion</u>

Plaintiff respectfully requests the Court to deny Defendant's motion to dismiss and alternative motion to stay, except that Plaintiff does not contest dismissal of her claims for breach of the implied warranties of merchantability and fitness for a particular purpose. If the Court dismisses any part of the Complaint other than the implied warranty claims, Plaintiff respectfully requests leave to amend. FED. R. CIV. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Respectfully submitted,

Date: October 30, 2017

**REESE LLP**

By:  */s/ Michael R. Reese*
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York  10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**HALUNEN LAW**
Melissa S. Weiner
*weiner@halunenlaw.com*
Amy E. Boyle
*boyle@halunenlaw.com*
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
Joseph Lipari
*liparij@thesultzerlawgroup.com*
Adam Gonnelli
*gonnellia@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York  12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747